**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO. 4:25CR03071** |
| Plaintiff, | |
| vs. | |
| KETANKUMAR CHAUDHARI, et al. | **MOTION TO ADJUDICATE AND** |
| | **AND ENFORCE ATTORNEY'S LIEN** |
| Defendant. | |

COMES NOW Movant Damilola J. Oluyole of Yole Law ("Movant" or "Counsel") respectfully moves this Court, pursuant to its inherent and ancillary jurisdiction, Neb. Rev. Stat. § 7-108, Federal Rule of Criminal Procedure 32.2, and 21 U.S.C. § 853, for an order (1) recognizing, adjudicating, and enforcing Counsel's attorney's lien in the amount of $42,701.50 and accruing against the proceeds of the Court-authorized interlocutory sale, and (2) directing that Counsel's reasonable fees and expenses be paid from those proceeds as an administrative expense of the sale, before any distribution to the United States or the Defendants. To the extent the Court determines that formal party status is required, Movant also requests, in the alternative, leave to intervene in this matter for the limited and ministerial purpose of having this attorney's lien adjudicated. In support, Movant states as follows:

## I. INTRODUCTION

The assets of the Defendants were frozen following the indictment.

Three facts distinguish this Motion from a garden-variety attorney's-fee dispute and make the relief requested not only appropriate but necessary.

First, this Court has already done precisely what Movant requests here. Earlier in this same case, the Court authorized an interlocutory sale of the Defendants' home and land. Order dated December 2, 2025. Movant performed the same type of legal services in connection with that sale, and Movant's reasonable fees and expenses were paid from the proceeds of that sale without objection from any party. Movant accepted the present engagement in reliance on that practice.

There is no principled reason for a different result with respect to this sale.

Second, Movant's services prevented total loss of the res to a senior lienholder. The Hotels were encumbered by bank mortgages, and the lender as of the authorship of this motion has ongoing foreclosure proceedings. Absent Counsel's services, negotiations with the lender, coordination with the United States Marshals Service and the Government, transaction management, and repeated trips to correctional facilities to obtain signatures and operating information from the detained Defendants, the Hotels would have been lost to foreclosure. The senior mortgage would have been satisfied, any equity consumed by costs and reduced sale values, and the Government, the Defendants, and all other parties in interest would have received nothing. Counsel's work is the reason a fund exists at all.

Third, the Government's current position denying the payment of necessary legal fees from the substitute res has effectively stalled the court-authorized sale process. Movant has received multiple communications from brokers, the title company, and other stakeholders requiring immediate legal action to finalize the pending transactions. However, because the Government's position prevents Counsel from being compensated for ongoing work, Counsel has been forced to cease all work on these matters pending resolution by this Court. This forced impasse significantly increases the risk that the remaining properties will be lost to foreclosure or government seizure, as Counsel is currently unable to perform the ministerial and legal tasks required to fulfill the Court's Sale Orders.

Fourth, the longer this matter is pending without resolution the further deterioration of the properties. This matter began with the sale of four hotel properties, due to the length of the matter, two of the four hotels are now under water with their values substantially lower than the mortgage.

The Defendants have been detained throughout the pendency of this case and their assets are restrained. They could not, and cannot, effectuate the Court's Sale Order without counsel. The Defendants cannot pay Counsel from unrestrained funds. But Counsel's services were an essential component of the Court's own sale process and the direct cause of the fund now on deposit, and the law is well-settled that the necessary costs of a judicially supervised sale, and the fees of those whose work created or preserved a common fund, come off the top of the fund before any substantive claim is satisfied. Movant therefore asks the Court to adjudicate and enforce Counsel's attorney's lien and to direct payment from the sale proceeds, consistent with the Court's prior

practice in this case.

## II. FACTUAL BACKGROUND

On August 19, 2025, the Defendants were indicted in this District on charges including various federal offenses, followed by a superseding indictment on February 18, 2026.

The assets of the Defendants were frozen following the indictment. These frozen assets include the Defendants' ownership interests in the entities Maharaj Bapa, LLC, Jay Maharaj LLC, and Bapa Maharaj LLC (the "Business"), which in turn operate four hotel properties.

The Defendants are currently held at Saunders County Jail and Phelps County Jail respectively.

Earlier in this case, on December 2, 2025, this Court authorized the interlocutory sale of the Defendants' home and land. Movant was retained in connection with that sale and performed the legal services necessary to effectuate it. Counsel's reasonable fees and expenses for that engagement were paid from the proceeds of that sale without objection from any party.

The Businesses in this Motion consists of four hotel properties operated by entities owned by the Defendants (the "Hotels"). The Hotels were encumbered by bank mortgages held by Premier Bank (the "Bank"). The Bank, along with brokers had been working together to effectuate the sale of the properties. This has been long, laborious and arduous negotiations to ensure the Bank's loans are paid while ensuring the properties are sold at the best possible values.

At a point during this process, the Bank initiated foreclosure proceedings against the Hotels. The foreclosure proceedings still hang over the properties as cloud if the sale is not completed. The bank is naturally and fairly considered about continued deterioration of the properties and currently fund all maintenance requirements while awaiting conclusion of this process. Had foreclosure been completed, the Hotels would have been sold at a substantially reduced value, the senior mortgage debt and foreclosure-related fees and expenses would have consumed the sale proceeds, and no value would have remained for the Government, the Defendants, or any other claimant.

The sale process has been long, laborious, and arduous. While Counsel and brokers have worked diligently to effectuate the sale of the properties, the process has been plagued by numerous potential buyers and multiple offers that fell through in the past. Furthermore, the longer this matter remains pending without resolution, the further the value of the properties deteriorates. This

deterioration is not theoretical; for example, the elevators in one of these properties recently stopped working, which directly and substantially decreased the market value of that property. Due to the length of this matter, two of the four hotels are now "under water," with their current valuations significantly lower than the outstanding mortgage debt.

On December 2, 2025, the Court granted the Government's motion for interlocutory sale of the Hotels pursuant to Fed. R. Crim. P. 32.2(b)(7) and 21 U.S.C. § 853(e), finding that the property was perishable in value and that an orderly court-supervised sale was necessary to preserve value for the parties in interest.

The Businesses retained Counsel to provide the legal services necessary to effectuate the Hotel Sale Order. Movant accepted the engagement on the same terms and in reliance on the same practice under which Movant's services in the Residential Sale had been compensated from sale proceeds.

Among other things, Counsel negotiated with the Bank to forbear from completing foreclosure pending the Court-authorized sale, coordinated with the United States Marshals Service and the Government, and managed the transaction so as to maximize value for the res. Counsel's efforts directly prevented the foreclosure and preserved the equity now held as a substitute res.

Counsel performed the following services, among others, each necessary to consummate the Court-ordered sale: (i) repeatedly traveling to Saline County Jail, Saunders County Jail, and Phelps County Jail to meet with the detained Defendants as principals of the Business in order to obtain signatures, authorizations, and operational information required by the purchaser and the Marshals Service; (ii) negotiating and documenting the sale; (iii) coordinating with the United States Attorney's Office and the United States Marshals Service regarding the mechanics, timing, and deposit of proceeds; (iv) handling lienholder, tax, licensing, and regulatory issues incident to the transfer; and (v) supervising closing. The sale was set to close on April 17, 2026.

Counsel has not been paid. The Defendants have no unrestrained funds from which to pay. Counsel's total reasonable fees and expenses are $42,701.50 and accruing.

On April 21, 2026, Counsel filed and served a Notice of Attorney's Lien upon the United States, the Marshals Service, and the Defendants, giving the written notice contemplated by Neb. Rev. Stat. § 7-108.

### III. LEGAL STANDARD

A.     The Court has ancillary jurisdiction to adjudicate attorney's fee and lien disputes arising out of litigation before it.

Federal courts possess inherent and ancillary jurisdiction to adjudicate fee disputes and attorney's lien claims arising out of matters litigated before them. See *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir. 1989); *Novinger v. E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir. 1987). This ancillary authority "enable[s] a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380.

That power extends to disputes over the compensation of counsel whose services were performed in connection with the court's own orders, including court-authorized sales. A court supervising a sale is a court of equity with authority to fix and order payment of the reasonable costs of the sale, including attorney's fees necessary to its accomplishment. See, e.g., *Trustees v. Greenough*, 105 U.S. 527, 532–37 (1881); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164–66 (1939).

B.     Under Nebraska law, an attorney has a charging lien on funds in the hands of the adverse party upon written notice.

Nebraska Revised Statute § 7-108 provides that "[a]n attorney has a lien for a general balance of compensation upon . . . money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time giving notice of the lien to that party." Upon the giving of written notice, the charging lien is perfected and attaches to such funds. *Jacobson v. Shresta*, 288 Neb. 615, 624 (2014); *State ex rel. FirsTier Bank, N.A. v. Buckley*, 244 Neb. 36, 45 (1993).

The Nebraska charging lien is designed to secure payment out of the fruits of the attorney's own labor. It is a recognized exception to the general rule against reaching restrained assets for pre-judgment fees, because the lien attaches not to the client's general estate but specifically to the value created or preserved by counsel.

C.     The necessary costs of a judicially authorized interlocutory sale, including attorney's fees required to effectuate it, are paid from sale proceeds as an administrative expense.

When a federal court orders the interlocutory sale of restrained or forfeitable property, the

necessary costs of carrying out that sale, including custodian, receiver, broker, and attorney's fees are, by long-settled equitable practice, paid from sale proceeds off the top, before distribution to any substantive claimant. See 28 U.S.C. § 2001–2004; Fed. R. Crim. P. 32.2(b)(7); *United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993).

*Greenough* supports the equitable principle that where a litigant's efforts preserve or bring a common fund under the court's control for the benefit of others, the reasonable costs, counsel fees, and necessary expenses of that effort may be paid from the fund before distribution. *Caplin & Drysdale*, *Chartered v. United States*, 491 U.S. 617 (1989), does not require a different result. *Caplin* addressed an attorney's attempt to collect fees out of forfeitable assets for services rendered in defending the criminal case, , and held that § 853 does not permit a defendant to carve out forfeitable assets to pay criminal-defense counsel. It did not address the distinct question presented here: whether reasonable costs necessarily incurred in carrying out a court-ordered sale, conducted under the Court's supervision, may be paid from the sale proceeds. Consistent with that distinction, 21 U.S.C. § 853(g) provides that income accruing from property ordered forfeited may be used to offset "ordinary and necessary expenses" required by law or necessary to protect the interests of the United States or third parties, and the Justice Manual likewise recognizes that certain such charges must be recovered, as a cost, from sale proceeds before payment of restitution and equitable sharing.

## IV. ARGUMENT

A.    The Court has already recognized in this very case that counsel's fees are properly paid from interlocutory-sale proceeds; the same rule should govern here.

This Court has already approved payment of Counsel's fees and expenses from the proceeds of the interlocutory sale of the Defendants' home and land. No party objected then, and nothing in the intervening period warrants a different outcome now. Movant accepted the present engagement in reliance on that practice, and the Government proceeded with its motion for an interlocutory sale of the Hotels knowing that counsel for the restrained entity would be required to effectuate the sale, just as before. Consistency, the integrity of the Court's sale process, and basic fairness all counsel in favor of the same result. See *Trustees v. Greenough*, 105 U.S. 527, 532–37 (1881); S*prague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164–66 (1939).

B.    Counsel's fees are a necessary cost of the Court's interlocutory sale and should be paid from

the proceeds before any substantive distribution.

The Government's current position has effectively stalled the court-authorized sale process. Because Counsel has been forced to cease work due to the lack of compensation, the two remaining properties are at immediate and high risk of being lost to foreclosure. This forced impasse prevents Counsel from performing the ministerial and legal tasks required to finalize pending transactions with new stakeholders. Without active legal management to close these sales, the "substitute res" will be entirely consumed by the ongoing physical deterioration of the buildings and the bank's foreclosure costs, leaving nothing for the Government or the Defendants.

The Court ordered the sale. The Defendants were detained and had no means to effectuate it. The Businesses required legal counsel to carry out the sale on terms acceptable to the Government and the Marshals Service. Counsel provided those services. Every dollar Counsel earned was spent producing the very fund now held as substitute res. Under both the federal equitable tradition governing judicial sales and the text of § 853 itself, those fees are a cost of the sale, not a claim against forfeitable property in the sense addressed by *Caplin & Drysdale*.

Treating Counsel's fees as an administrative expense is also the only outcome consistent with the integrity of the Court's own sale process. If the Government could invoke the Court's authority to liquidate a restrained business, rely on counsel for the restrained entity to sign, coordinate, and close the transaction, and then deny any source of payment for that counsel, no competent lawyer could prudently undertake such engagements in the future to the detriment of the Government, the Defendants, and the Court.

C.      Counsel's services preserved the res from foreclosure; under the common-benefit/salvor doctrine, a party whose work creates or preserves a fund is entitled to compensation from the fund.

It is a long-standing equitable principle that one who has successfully maintained a suit, wholly or partly at his own expense, has preserved or recovered a fund for the benefit of others is entitled to reimbursement from the fund. *Trustees v. Greenough*, 105 U.S. 527, 532–37 (1881); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392–96 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common-benefit doctrine is not confined to class actions; it reflects the basic equitable precept that those who benefit from a fund should bear a proportionate share of the cost of its creation or preservation.

Here, the undisputed facts place Counsel squarely within the doctrine. The Hotels were facing foreclosure. Had foreclosure proceeded, the senior mortgage debt and foreclosure costs would have exhausted the sale price, leaving no equity for the Government or any other claimant. Counsel's services including negotiating with the Bank, coordinating with the Marshals Service and the Government, and executing the Court-supervised sale, converted what would have been a zero-recovery foreclosure into an orderly sale generating the substantial fund now on deposit. Every dollar of that fund exists because of Counsel's work. Under *Greenough* and its progeny, a reasonable fee is payable from that fund before the Government or any other claimant is heard.

Every dollar of the fund currently held in escrow exists solely because of Counsel's labor in navigating the impending foreclosure and managing multiple failed offers to reach a successful closing. Under JM § 9-111.125, these professional fees are a priority administrative cost that "must be recovered, as a cost, from the proceeds of sale before payment of restitution and equitable sharing". Treating these fees as an administrative expense is the only way to protect the integrity of the Court's sale process and ensure the remaining property values do not continue to vanish due to maintenance failures and legal gridlock.

D.      Section 853(k) does not bar this motion, and in any event does not bar limited-purpose intervention to adjudicate a charging lien on funds the Court itself ordered liquidated.

Section 853(k) provides that "no party claiming an interest in property subject to forfeiture …may (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subject to forfeiture under this section, subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section." 21 U.S.C. § 853(k). The statute does not apply here for three independent reasons.

First, this Motion does not "intervene in a trial or appeal" and does not "commence an action at law or equity against the United States"; it invokes the Court's ancillary jurisdiction over its own Sale Order to determine the priority of an administrative expense of that sale. Courts have consistently held that § 853(k) does not strip a federal court of the authority to adjudicate collateral matters arising out of its own management of the res, including compensation of custodians, receivers, and counsel whose services were necessary to effectuate a court-ordered sale. See, e.g., United States v. Bell, 5 F.3d 64, 66–67 (4th Cir. 1993); cf. *United States v. Ripinsky*, 20 F.3d 359,

363 (9th Cir. 1994) (recognizing court's ongoing equitable authority over restrained assets).

Second, Counsel is not a "party claiming an interest in property subject to forfeiture" in the sense § 853(k) addresses. The statute, read together with § 853(c) and (n), channels substantive third-party claims of ownership or security interests in the res into the post-conviction ancillary proceeding. Counsel asserts no such ownership or competing title claim. Counsel's claim is for reasonable compensation for work the Court's Sale Order required, an administrative cost of producing the very fund in which competing substantive interests are now contested. That is the kind of priority claim traditionally resolved at the front end of a judicial sale, not in § 853(n) ancillary proceedings. See *Trustees v. Greenough*, 105 U.S. 527, 532–37 (1881).

Third, to the extent § 853(k) is read to reach this motion in any respect, Counsel respectfully requests leave to intervene for the limited and ministerial purpose of adjudicating this lien. Limited-purpose intervention is routinely granted where the would-be intervenor seeks only to protect a discrete property interest in a fund under the court's control without participating in the merits of the underlying action. See Fed. R. Civ. P. 24(a) (incorporated through the Court's inherent authority); *Kalyawongsa v. Moffett,* 105 F.3d 283, 287–88 (6th Cir. 1997) (attorney's-lien intervention is permissible and routinely allowed). Such limited intervention does not run afoul of § 853(k) because Counsel takes no position on the forfeitability of the underlying assets or on the criminal merits.

E.      Counsel holds a perfected attorney's charging lien under Neb. Rev. Stat. § 7-108, enforceable in this Court.

Counsel was "employed" by the Business in a matter, action or proceeding namely, the interlocutory sale portion of this criminal case. Neb. Rev. Stat. § 7-108. The sale proceeds are "money due to [Counsel's] client and in the hands of the adverse party" (the United States or its custodian). Id. Upon the filing and service of the Notice of Attorney's Lien on April 21, 2026, the lien was perfected. *Jacobson*, 288 Neb. at 624.

F.      The requested fees are reasonable and properly documented.

Counsel's claim of $42,701.50 reflects reasonable hours of work at an attorney rate of $350.00/hr. The rates are consistent with prevailing rates in the District of Nebraska for counsel of comparable experience in complex commercial and federal criminal asset matters.

## V. RELIEF REQUESTED

WHEREFORE, Movant respectfully requests that the Court enter an Order:

1. To the extent required, granting Movant leave to intervene in this matter for the limited and ministerial purpose of adjudicating the attorney's lien asserted herein, without thereby becoming a party to the underlying criminal case or to any forfeiture proceeding;

2. Recognizing and adjudicating Counsel's attorney's charging lien in the amount of $42,701.50 and accruing against the proceeds of the Court-authorized interlocutory sale, effective from the date of the Notice of Attorney's Lien;

3. Finding that Counsel's fees and expenses are a necessary administrative expense of the Court-authorized interlocutory sale, payable from the gross sale proceeds before any distribution to the United States or the Defendants;

4. Directing TitleCore National, LLC, as present custodian of the sale proceeds, to pay $42,701.50 to Yole Law within [14] days of the Order, or such lesser amount as the Court finds reasonable after hearing;

5. In the alternative, preserving Counsel's lien and priority with respect to any sale proceeds remaining after any future forfeiture adjudication, and expressly permitting Counsel to assert the lien in any ancillary proceeding under 21 U.S.C. § 853(n); and

6. Granting such further relief as the Court deems just and proper.

Dated this 21st day of April 2026.

Respectfully Submitted,

*/s/ Dami J. Oluyole*
DAMI J. OLUYOLE, # 25149
YOLE LAW P.C., L.L.O.
ATTORNEYS & COUNSELORS AT LAW
7930 BLONDO STREET, SUITE 100
OMAHA, NE  68134
T: (402) 915-9360
C:(402) 880-9456
F: (402) 403-1330
E-MAIL: DAMMY@YOLELAW.COM

## CERTIFICATE OF SERVICE

Damilola J. Oluyole, hereby certifies that the foregoing document was filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the registered participants on this 21st day of April, 2026.