IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KETANKUMAR CHAUDHARI, RASHMI SAMANI, AMIT P. CHAUDHARI, AMIT B. CHAUDHARI, MAHESHKUMAR CHAUDHARI, HINABEN CHAUDHARI, and JAYESHKUMAR CHAUDHARI,<br><br>Defendants. | **4:25CR3071**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the Court on three motions to suppress filed by Defendant Amit P. Chaudhari. Filing No. 252; Filing No. 253; Filing No. 279. The Court held a hearing on the pending motions on September 9, 2026. It ordered a transcript of the hearing and deemed the motion submitted upon receipt of the transcript. A transcript has been filed and the matter is now ripe for disposition. For the reasons discussed below, the undersigned recommends the Court deny Amit P.'s motions.

## BACKGROUND

Amit P.'s motions to suppress involve two different sets of facts. First, on July 30, 2025, officers conducted a traffic stop, searched the truck Amit P. was driving, and arrested Amit P. for a controlled substance violation. During the search incident to Amit P.'s arrest, officers seized his cell phone. Amit P. is challenging the warrantless search of the truck and warrantless arrest of his person. He seeks to suppress evidence obtained from the seized phone as fruit of the warrantless search and the warrantless arrest. Second, Amit P. is challenging an August 11, 2025 warrant that authorized officers to seize

and search phones while searching a hotel. He seeks a *Franks* hearing on alleged omissions in the warrant affidavit. The undersigned begins with the July traffic stop.

**July Traffic Stop.**

After hearing the testimony of the witnesses and reviewing the exhibits submitted at the motion to suppress hearing, the undersigned finds the following facts are credible. On July 30, 2025, federal task force officers were surveilling a hotel as part of an ongoing federal investigation. Filing No. 309 at 38. At this time, there was a planned law enforcement operation scheduled to occur August 12. *Id.* at 58. In anticipation of this operation, affidavits were already drafted to obtain warrants to search different hotels, arrest Amit P., and seize and search Amit P.'s cell phones. *Id.* at 58–59. The search warrants for these hotels were later obtained and executed. *Id.* at 60.

On July 30, however, one of the surveilling officers—Detective Justin Barnes—saw a truck turn out of the hotel parking lot onto the road without signaling. Filing No. 309 at 41. The truck was also missing a front license plate and Detective Barnes knew it did not have a single-plate permit. *Id.* Detective Barnes told OPD officers to stop the truck. *Id.*; Filing No. 309 at 10, 20.

After stopping the truck, Officer Andrew Woodard approached the driver's side door. He identified himself and asked the driver, Amit P., Filing No. 309 at 10, for his license and registration. Exhibit 3 at 1:00–1:12. The other officer talked to the passenger, who showed a picture of his ID on his phone. Two minutes into the stop, this officer was still writing down the passenger's information, Exhibit 101 at 1:45–2:25, when Officer Woodard asked Amit P., "Would you be willing to let us search the truck?" Amit P. nodded his head enthusiastically and said, "Yeah!" Officer Woodard followed up by asking, "You'd let us search it?" Amit P. agreed, "Yeah." Exhibit 3 at 2:10–2:18; *see also* Filing No. 309 at 11. Officer Woodard told Amit P. to step out of the truck and patted him down for weapons. Then, he directed Amit P. to sit on the front of the patrol car. *Id.* at 2:35–3:06. Neither Amit P. nor the passenger objected to the search and Amit P. did not revoke his consent for the search.

Officer Woodard knew part of the federal investigation involved the use of khat. Filing No. 309 at 12. Khat is a dark brown or possibly green and red leafy substance that is chewed and spit. *Id.* at 12, 44. Officer Woodard opened the passenger side door and saw a cup in the lower door pocket. He looked in the cup and said, "I think we got that khat." Exhibit 3 at 6:03–6:19. Officer Woodard also found $5,000 in cash in the center console. Filing No. 309 at 11. He radioed, "We got a small bag of khat and a very large stack of twenties." Exhibit 3 at 6:27–6:30.

This was Officer Woodard's first time encountering khat. Filing No. 309 at 18. He has not taken a course discussing khat and he does not know what it smells like. *Id.* He testified the substance he found was packaged like a narcotic in a twisted plastic baggie. *Id.* at 12. There was also spit in the cup. *Id.* at 19. Officer Woodard testified the substance did not look like chewing tobacco. *Id.* One of the other officers present looked at the substance and said, "I don't know what that is." Exhibit 3 at 8:56–9:04. Officer Woodard asks Amit P. about the "khat." Amit P. tells him it is supari. *Id.* at 12:08–12:45. Officer Woodard is also unfamiliar with supari. Filing No. 309 at 12, 19.

Officer Woodard texted a photo of the substance to Detective Barnes to identify it. Filing No. 309 at 13,16; Exhibit 3 at 8:56–9:06. Detective Barnes does have experience with khat, and he believed the substance was khat. Filing No. 309 at 41–42, 45. Officer Woodard also searched for photos of khat on his phone to compare with the substance he found. *Id.* at 28. Although he could not initially remember whether this was before or after Amit P. was handcuffed, *id.* at 24, Officer Woodard later testified this occurred before Amit P. was handcuffed. *Id.* at 28. Similarly, he could not remember whether he took a photo of the substance to send to Detective Barnes before or after Amit P. was handcuffed. *Id.* at 31. The BWC footage appears to show Officer Woodard searched for "khat" on his phone and texted Detective Barnes a photo before Amit P. was handcuffed. Exhibit 3 at 8:56-9:06; 12:08–14:00.[1] Officer Woodard also testified, "We had determined that we believed the substance was khat before we put cuffs . . . on Amit P." Filing No.

---

[1] The BWC footage shows Officer Woodard's partner sent photos of the substance and cash to Detective Dallin Proffitt, the other officer surveilling the hotel with Detective Barnes, Filing No. 309 at 38, while the officers were transporting Amit P. and the passenger to Douglas County Corrections. Exhibit 101 at 46:19–47:10.

309 at 26. It is credible Officer Woodard texted Detective Barnes a photo of the substance, and Detective Barnes identified it as khat, before Amit P. was arrested.

Approximately fifteen minutes into the encounter, officers handcuffed Amit P. and placed him in the back of the patrol car. Exhibit 3 at 14:27–16:00. An officer searched him and seized his phone. Exhibit 101 at 14:30–16:00. The officers then discussed how the substance does not look like supari. Exhibit 3 at 22:35–22:48. Officer Woodard also inspected the cup for red residue after Amit P. was handcuffed. *Id.* at 15:25–15:30. While he is in the back of the patrol car, Amit P. tells the officer his phone number is 402-804-0862. Exhibit 101 at 35:50–36:03; *see also id.* at 1:18:08–21 (providing the same number during booking at Douglas County Corrections).

Amit P. was charged with a controlled substance violation, but the charge was dismissed after testing revealed the substance was not khat. Filing No. 309 at 32–33. On August 1, 2025, law enforcement obtained a warrant to search Amit P.'s seized phone. Exhibit 1. Amit P. is not challenging this warrant. The undersigned turns to the warrant authorizing the search of the hotel in August.

**Search of the Hotel.**

FBI Special Agent Rachel Sullivan submitted an affidavit in support of an August 11, 2025 warrant that the undersigned signed. In the affidavit, Agent Sullivan attests Amit P. helps manage hotels and other businesses owned by his sister, Rashmi, and her husband Ketankumar Chaudhari ("Ken"). Exhibit 2 ¶ 14; *see also id.* ¶¶ 55–58 (corroborating Amit P.'s involvement with the hotels). The search warrant authorizes a search of one of these hotels—an Inn and Suites[2] ("The Inn"). A maintenance worker told law enforcement Amit P. lives in a remodeled room at The Inn. *Id.* ¶ 68. Amit P.'s room is not listed as one of the places to be searched. *Id.* Attachment A. This search warrant application was the culmination of a long running investigation into human trafficking, drug trafficking, financial crimes, and immigration crimes occurring at these hotels. *Id.* ¶ 13.

---

[2] The warrant affidavit and warrant refer to this Inn and Suites as Target Premises #1 or The Inn. Exhibit 2 ¶¶ 6(a), 7, Attachment A.

Amit P. is not challenging the warrant affidavit established probable cause to search The Inn. Filing No. 253 at 1. He is challenging the warrant because it authorized the seizure and search of "[a]ny cell phone belonging to [Amit P. and his co-defendants] and used, if not exclusively, extensively by them." Exhibit 2, Attachment B ¶ 2. The undersigned limits the summary of the lengthy warrant affidavit to facts relevant to this limited issue.

First, law enforcement searched Ken's phone and found messages between Ken and Amit P. in which Ken directed Amit P. to make certain bank deposits and Amit P. confirmed or sent pictures of transaction or deposit receipts. *Id.* ¶ 141. Agent Sullivan attests this suggests Amit P. can access some of Ken and Rashmi's bank accounts. *Id.* Ken and Rashmi (and multiple LLCs owned by Ken and Rashmi) hold 26 bank accounts in two different banks. *Id.* ¶¶ 134–35. Agent Sullivan details suspicious financial transactions between Ken and Rashmi's accounts she believes are indicative of money laundering. *See id.* ¶¶ 143–48.

Second, Agent Sullivan attests most of the hotel employees are illegal aliens who are exploited for their labor. Exhibit 2 ¶ 22. She outlines information she received suggesting Ken transports people who are here illegally to work for his businesses. As it pertains to Amit P., she explains a confidential source told law enforcement Ken hired them to transport two families cross-country to meet Amit P. One family was Indian and the other family did not speak English. *Id.* ¶¶ 30, 33. Investigators confirmed a third family transported by a different source in similar circumstances were in the United States illegally. *Id.* ¶ 25. For the first trip, the source picked up a man, woman, and teenage girl in North Dakota and transported them to Texas. *Id.* ¶¶ 29–30. The teenager told the confidential source they were going to Texas to work in a hotel. *Id.* ¶ 31. The second trip, the source picked up a man, woman, and child to transport them to the same address in Texas. *Id.* ¶ 33. Ken texted the source Amit P.'s phone number (402-804-0862) because Amit P. was the contact person in Texas for both trips. *Id.* ¶¶ 30, 33.

Third, Agent Sullivan generally asserted alien harboring, concealing, and transporting organizations use cell phones for a variety of purposes. *Id.* ¶¶ 185(f),(j),(l),(m). For example, cell phones may be used to store false identities or

immigration records. *Id.* ¶ 185(m). Case in point, she attests in the warrant affidavit that law enforcement searched Ken's phone and found a copy of an employee's Indian passport and ICE paperwork. *Id.* ¶ 40–42.

Ultimately, agents executing the August 11, 2025 warrant did seize and search phones. Filing No. 309 at 60. Amit P. is moving to suppress evidence obtained from phones associated with the numbers 402-804-0862 and 470-891-2152. There is no evidence the phones associated with either number were seized or searched during the search of The Inn.

## ANALYSIS

Amit P. filed three motions to suppress. First, he challenges the warrantless search of the truck. Filing No. 252. The Government asserts he consented to the search. Second, he challenges his warrantless arrest. Filing No. 279. The Government asserts there was probable cause for a felony arrest and the independent source or inevitable discovery doctrine applies. Amit P. is not challenging the traffic stop.[3] Third, he challenges the warrant authorizing the search and seizure of cell phones during the search of The Inn. Filing No. 253. The Government asserts the good-faith exception applies.

### I. Warrantless Search (Filing No. 252).

"[A] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." *United States v. Alloway*, 25 F.4th 1093, 1096 (8th Cir. 2022) (quoting *United States v. Garcia-Garcia*, 957 F.3d 887, 892 (8th Cir. 2020)). "The government is required to show voluntary consent by a preponderance of the evidence." *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006). The "focus is not whether [the defendant] subjectively consented, but rather, whether a reasonable officer would believe consent was given and can be inferred from words, gestures, or other conduct." *United States v. Guerrero*, 374 F.3d 584, 588 (8th Cir. 2004). The Court

[3] In closing, Amit P.'s counsel argues the traffic stop was pretextual. Filing No. 309 at 68. "Pretextual traffic stops are a violation of the Fourth Amendment." *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016) (quoting *Eldridge*, 984 F.2d at 947). "However, if police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle." *Id.* (citations omitted). Amit P. does not dispute there was probable cause to stop the truck.

considers whether, under the totality of the circumstances, a defendant voluntarily consented by considering factors related to the defendant's "characteristics and behavior," "the environment surrounding the defendant at the time he gave his consent," and "the interaction between police and the defendant in the encounter." *United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006) (listing factors to consider). "No one factor is dispositive." *Id.*

Amit P. challenges the warrantless search of his truck because it is unclear from the police reports who consented to the search and when. For instance, he argues it is unclear from the police reports whether officers unlawfully prolonged his detention prior to seeking his consent to the search. The police reports are not in evidence. However, the BWC footage shows Officer Woodard asked Amit P. two minutes into the encounter, "Would you be willing to let us search the truck?" Amit P. nodded his head enthusiastically and said, "Yeah!" Officer Woodard followed up by asking, "You'd let us search it?" Amit P. agreed, "Yeah." Exhibit 3 at 2:10–2:18. This conversation occurred while the other officer was still obtaining the passenger's identification.

In other words, Amit P.—the driver—expressly consented to the search (twice) two minutes into the encounter while officers were still investigating the traffic stop. First *see United States v. Eldridge*, 984 F.2d 943, 948 (8th Cir. 1993) ("The driver of a car has the authority to consent to a search of that vehicle."); and then *see United States v. Ward*, 140 F.4th 945, 951 (8th Cir. 2025) (routine traffic stop tasks "may include asking a passenger for identification"). Officer Woodard was not required to tell Amit P. that he did not need to consent to the search. *United States v. Alcantar*, 271 F.3d 731, 737 (8th Cir. 2001). There were only two officers by the truck and Officer Woodard did not threaten or coerce Amit P. into consenting to the search. There is no evidence Amit P. or the passenger objected to the search. Nor is there evidence Amit P. revoked his consent. Amit P.'s motion to suppress evidence obtained as a result of the warrantless search should be denied.

## II. Warrantless Arrest (Filing No. 279).

Amit P. also moves to suppress evidence obtained as a result of the warrantless arrest. "A police officer may lawfully arrest an individual for a felony without a warrant if

the officer has probable cause." *United States v. Oakley*, 153 F.3d 696, 697 (8th Cir. 1998) (quoting *Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998)). "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Webster*, 625 F.3d 439, 442 (8th Cir. 2011) (quoting *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010)). Hindsight evidence is not relevant to this analysis because "whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *New v. Denver*, 787 F.3d 895, 901 (8th Cir. 2015) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Officers have "substantial latitude" to draw inferences from the facts and "need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *Webster*, 625 F.3d at 442 (quoting citations omitted). This latitude is not limitless. Officers cannot close their eyes to exculpatory evidence and must "conduct a reasonably thorough investigation prior to arresting a suspect." *Kuehl v. Burtis*, 173 F.3d 646, 650–51 (8th Cir. 1999). Ultimately, however, an officer is not required to exclude all reasonable possibilities before making a warrantless arrest. *United States v. Mathes*, 58 F.4th 990, 994 (8th Cir. 2023). "Probable cause 'is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)).

"Constructive possession of drugs can be established either by [the suspect's] exercise of ownership, dominion, or control over the contraband itself or dominion over the premises in which the contraband is concealed." *Mathes*, 58 F.4th at 994 (quoting *United States v. Blakey*, 449 F.3d 866, 869 (8th Cir. 2006)). "Possession requires

'knowledge of an object, the ability to control it, and the intent to do so.'" *Id.* (quoting *United States v. Tenerelli*, 614 F.3d 764, 770 (8th Cir. 2010)).

"Catha edulis, commonly called 'khat,' is a bush plant with stimulating effects" that "contains variable levels of cathinone and cathine." *United States v. Sheikh*, 367 F.3d 756, 759 n.3 (8th Cir. 2004). Cathinone is a Schedule I controlled substance and cathine is a Schedule IV controlled substance. Neb. Rev. Stat. § 28-405 Schedule I(e)(4), Schedule IV(b)(7). Accordingly, possession of khat containing cathinone or cathine is a Class IV felony under Nebraska law. Neb. Rev. Stat. § 28-416(3).

Officer Woodard is not familiar with khat but he knew khat usage was part of the underlying federal investigation. When Officer Woodard searched the truck, he found $5,000 in cash and an unknown substance wrapped in a twisted plastic baggie. He said, "I think we got that khat" and testified the substance was packaged like a narcotic. Officer Woodard texted a photo of the substance to Detective Barnes. Detective Barnes is familiar with khat, and he identified it as khat. Officer Woodard also searched for photos of khat on his phone to compare to the substance he found in the truck. Additionally, he asked Amit P. about the substance. Specifically, he asked, "Do you know what the khat?" Amit P. responds, "Huh?" and Officer Woodard repeats, "The khat?" Amit P. then understands what Officer Woodard is asking about even though Officer Woodard does not show him the substance, and the baggie was found tucked into the pocket in the passenger side door. Amit P. tells Officer Woodard the substance is supari and explains supari is available for purchase at the grocery store. Exhibit 3 at 12:08–12:45. Amit P. was arrested for possession of a controlled substance.

Considering the totality of the circumstances, there was probable cause to arrest Amit P. for possession of a controlled substance based on the facts known to the arresting officers at the time of the arrest. The fact that later testing revealed the substance is not khat is not relevant.[4] *New*, 787 F.3d at 901. Officer Woodard conducted a reasonably

---

[4] There is no evidence indicating whether Officer Woodard could have field tested the substance for cathinone or cathine. However, assuming a field test was possible, Officer Woodard did not need to field test the substance before arresting Amit P. *See Mathes*, 58 F.4th at 994 (a "field test . . . is not required when the totality of the circumstances establish a fair probability or substantial chance that the substance is illicit").

thorough investigation. Since he was not familiar with khat, he sent a picture to an officer with khat experience to identify it. He also looked up photos of khat on his phone, knew the federal investigation involved khat usage, immediately flagged, "I think we got that khat," when he first found the substance, and knew the substance was packaged like a narcotic. Officer Woodard is not required to ignore this inculpatory evidence and accept Amit P.'s explanation that the substance was supari.

Additionally, the substance was found in the front passenger door. Amit P. was the driver—he controlled the truck. *See United States v. Parker*, 587 F.3d 871, 881 (8th Cir. 2009) ("A defendant's control and dominion over a vehicle can indicate knowledge."). And the fact that Amit P. understood what Officer Woodard was asking about with limited context indicates he knew the substance was in the truck.[5] *See Mathes*, 58 F.4th at 994 (probable cause to arrest passenger for drug paraphernalia—a scale with white residue—in the center console when she had just driven the car); *see also United States v. Williams*, 68 F.4th 304, 311 (6th Cir. 2023) (drugs found in gym bags on the back seat gave officer probable cause to arrest driver and passenger); *Maryland v. Pringle*, 540 U.S. 366, 372, 374 (2003) (probable cause to arrest front-seat passenger for drugs found between the armrest and the back seat of the car).

Ultimately, there was probable cause to believe the substance was khat and Amit P. knew the substance was in the truck. Officers could arrest Amit P. for possession of a controlled substance without a warrant. Amit P. is not challenging the seizure of his phone as a valid search incident to his arrest. Accordingly, Amit P.'s motion to exclude evidence obtained from the phone as fruit of the warrantless arrest should be denied.

---

[5] Amit P. argues in his briefing officers charged him with possession despite later saying, "He doesn't know anything about the drugs." Filing No. 279 at 4, 7. For context, officers transported Amit P. and the passenger to Douglas County Corrections for booking. Filing No. 309 at 13. The passenger only speaks Spanish. *Id.* at 14. Another officer arrived during booking and questioned the passenger in Spanish. She translated the passenger's responses for the other officers, saying, "He"—the passenger—"doesn't know anything about the drugs." Exhibit 101 at 1:09:50–1:10:28. Whether the passenger later told officers he didn't know about the substance is irrelevant to whether there was probable cause to believe Amit P., the driver, knowingly possessed the substance at the time of the arrest.

**Inevitable Discovery.**

The Government also argues the evidence seized from Amit P.'s phone should not be suppressed even if probable cause did not exist to arrest him without a warrant because the independent source or inevitable discovery doctrine applies.

"The independent-source doctrine applies if the evidence both would have been acquired by lawful means had the unlawful search not occurred and in fact *was* acquired (or reacquired) by these lawful means. The inevitable-discovery doctrine, on the other hand, applies if the evidence would have been acquired by lawful means had the unlawful search not occurred but in fact *was not* acquired (or reacquired) by these lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020).

To show inevitable discovery the government must prove by a preponderance of the evidence: "(1) there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. James*, 353 F.3d 606, 617 (8th Cir. 2003). "One way for police to acquire evidence lawfully is pursuant to a valid search warrant." *Baez*, 983 F.3d at 1037. "To determine whether evidence within the scope of a valid warrant would have been acquired had a prior unlawful search not occurred, we ask whether (1) law enforcement 'would have sought a warrant even if the [unlawful] search had not occurred,' and (2) 'the warrant was supported by probable cause even without information gained from the [unlawful] search.'" *Id.* (quoting *United States v. Anguiano*, 934 F.3d 871, 874 (8th Cir. 2019)).

Officers arrested Amit P. and seized his phone on July 30. At this time, law enforcement had already drafted affidavits to obtain warrants to search different hotels and seize and search Amit P.'s cell phones in connection with the ongoing federal investigation. The warrant to search the hotel where Amit P. lived is in evidence. The warrant affidavit explains how certain criminal organizations use cell phones and asserts a couple of times that these general principles are supported by "reviews of phones belonging to Ken and Amit." *See* Exhibit 2 ¶¶ 185(j), (f). However, as set forth in more

detail below, this warrant affidavit still established probable cause to seize and search Amit P.'s phones based on facts not attributed to Amit P.'s phone.

In other words, there is a reasonable probability the evidence on Amit P.'s phone would have been inevitably discovered pursuant to a warrant that (1) authorized the seizure and search of his phones, (2) was sought because of the separate federal investigation, and (3) was independently supported by probable cause. The inevitable discovery doctrine applies. The Court should not suppress evidence obtained via the phone seized from Amit P. pursuant to his warrantless arrest even if the arrest was unlawful.

### III. August 11, 2025 Warrant (Filing No. 253).

Amit P. argues defects in the August 11 warrant should result in suppression of evidence obtained from his cell phones, including phones associated with numbers ending in 0862 and 2152. Filing No. 253 at 1. There are two fundamental problems with his motion.

First, there is evidence officers seized and searched phones pursuant to the August 11 warrant. But the warrant allowed officers to seize and search phones belonging to different co-defendants. Amit P. only has standing to challenge the search of his phones, not the search of his co-defendant's phones. *See United States v. Turner*, 781 F.3d 374, 382 (8th Cir. 2015). It is Amit P.'s burden to prove standing, *see id.*, and there is no evidence officers seized and searched any phones belonging to Amit P. pursuant to the August 11 warrant. Second, Amit P. moves to suppress evidence obtained from phones with numbers ending in 0862 and 2151. Assuming these phones belong to Amit P., there is no evidence either phone was actually seized or searched pursuant to the August 11 warrant.[6] It is Amit P.'s burden to establish "the factual nexus between the constitutional violation and the challenged evidence." *United States v. Reed*, 921 F.3d

---

[6] The Government argues the phone ending in 0862 was the phone seized during the July traffic stop and searched pursuant to the August 1 warrant. Filing No. 260 at 3. There is also no direct evidence to support this assertion, *see* Exhibit 1 (August 1 warrant), but this is the number Amit P. told officers was his phone number. Amit P. is not challenging the August 1 warrant.

751, 755 (8th Cir. 2019) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011)).

The Court could deny Amit P.'s motion on these bases. However, presuming for the purposes of this motion that phones belonging to Amit P. were seized and searched pursuant to the August 11 warrant, the undersigned also addresses whether defects in the August 11 warrant should result in the suppression of evidence obtained from these phones.

### A. *Probable Cause and Nexus.*

Amit P. argues the warrant affidavit did not establish probable cause to believe evidence would be found on his cell phones. Probable cause exists when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Reed*, 921 F.3d at 757. When the issuing judge relies on an affidavit to find probable cause, the four corners of the affidavit must establish the nexus between the item to be seized and the criminal conduct. *See United States v. Saddler*, 19 F.4th 1035, 1039 (8th Cir. 2021).

The issuing judge may "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue [the] warrant . . . ." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Pringle*, 540 U.S. at 370 (internal quotations omitted). "Information from a confidential informant may be sufficient to establish probable cause if it 'is corroborated by independent evidence' or if the informant 'has a track record of supplying reliable information.'" *United States v. Vinson*, 414 F.3d 924, 930 (8th Cir. 2005) (quoting *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002)).

The affidavit established probable cause to believe, at a minimum, evidence of money laundering and the crime of transporting or conspiring to transport aliens as well as conspiracy to commit both offenses would be found on Amit P.'s phones. *See generally* 18 U.S.C. § 1956(a), (h); 8 U.S.C. § 1324(a). Specifically, Agent Sullivan attested to

several suspicious financial transactions from Ken and Rashmi's bank accounts. Investigators searched Ken's phone and found messages between Ken and Amit P. in which Ken directs Amit P. to make certain deposits and Amit P. confirms or sends photos of the transaction or deposit receipts. Additionally, Agent Sullivan attests Ken hired a confidential source to transport two families cross-country to meet Amit P. in Texas. This was corroborated by a search of Ken's phone—Ken texted the source the Texas drop-off address in conjunction with Amit P.'s phone number. Agent Sullivan also attests alien harboring and transporting organizations use cell phones to store immigration records and further attests law enforcement found copies of an employee's passport and ICE paperwork on Ken's phone. Considering the totality of the circumstances, probable cause existed to issue the warrant to seize and search Amit P.'s phones.

**B. *Breadth and Particularity.***

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. This requirement exists to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

"Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Anderson*, No. 1:23-CR-9, 2024 WL 4198673, at *5 (N.D. Ind. Sept. 16, 2024), *adhered to by* 2025 WL 778761 (N.D. Ind. Mar. 11, 2025) (quoting *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)). "To satisfy the particularity requirement of the [F]ourth [A]mendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (quoting *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007)). "The Fourth Amendment requires particularity in the warrant, not supporting documents like an application or affidavit." *Id.* However, "a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the

supporting document accompanies the warrant." *United States v. Campbell*, 6 F.4th 764, 770 (8th Cir. 2014) (quoting *Groh v. Ramirez*, 540 U.S. 551 (2004)).

"Cell phone warrants have been upheld as sufficiently particular when the evidence could be stored anywhere on a suspect's phone, and 'the warrant cabin[ed] the things being looked for by stating what crime is under investigation.'" *United States v. Gross*, No. 25-CR-4021, 2025 WL 1833818, at *4 (N.D. Iowa July 3, 2025), *R&R adopted by* 2025 WL 2058776 (N.D. Iowa July 23, 2025) (quoting *United States v. Bishop*, 910 F.3d 335, 337–38 (7th Cir. 2018)). "A warrant to search a cell phone 'need not be more specific than knowledge allows.'" *Id.* (quoting *United States v. Ivey*, 91 F.4th 915, 918 (8th Cir. 2024)). Thus, the warrant does not need to identify the phone to be seized and searched by its make, model, or phone number. *Anderson*, No. 1:23-CR-9, 2024 WL 4198673, at *10; *United States v. Smith*, No. CR 19-324, 2021 WL 2982144, at *7 (D.D.C. July 15, 2021), *aff'd*, 108 F.4th 872 (D.C. Cir. 2024); *United States v. Nurse*, No. 6:24-CR-06054, 2025 WL 3033464, at *7 (W.D.N.Y. Oct. 30, 2025).

The warrant authorized the seizure of any cell phone "used, if not exclusively, extensively by" Amit P. It allowed officers to search Amit P.'s cell phones for passwords, internet activity, IP addresses, certain business records, evidence of who used the phone (including via remote access) and when, information related to applications, contextual information to help understand evidence or conduct a forensic exam, and programs designed to wipe data. The warrant also allowed officers to search for evidence of the cell phone user's intent to commit the investigated crimes and for communications related to the target offenses. The warrant did not identify specific phones to be seized and searched by, for example, the associated phone number or make and model.

First, the warrant identifies the phones to be seized and searched with sufficient particularity. Officers were searching a hotel. The warrant did not allow them to seize any phone found within the hotel. Rather, they were only authorized to seize and search phones used extensively by Amit P. and his co-defendants. *Cf. United States v. Griffith*, 867 F.3d 1265, 1277 (D.C. Cir. 2017) (warrant overly broad when it authorized the seizure of all phones within home as opposed to phones owned by defendant or linked to the crime). To determine whether a phone was used extensively by Amit P., officers were

authorized to search the phone to determine who used the phone. *See United States v. Robinson*, No. 23-CR-212, 2024 WL 3315497, at *2 (E.D. Wis. Apr. 29, 2024), *R&R adopted by* 2024 WL 2862111 (E.D. Wis. June 6, 2024) (collecting cases) (criminals do not label their phones—even manipulating a phone to see its lock screen is a search). The warrant did not need to identify the specific phone to be seized and searched by its make and model or associated number. Officers were not required to know before searching the hotel what phones they would find during the search. The warrant authorizing officers to seize and search Amit P.'s phones is not insufficiently particular.

Second, the warrant did not allow officers to indiscriminately search Amit P.'s phones. The warrant described the items to be seized as materials constituting evidence of the target offenses[7] from January 1, 2019 to August 11, 2025. Exhibit 2, Attachment B. The warrant also specifically delineated items to be seized from Amit P.'s cell phones. For some categories of materials, like communications, the warrant reiterated a second time that the digital material to be seized related to the target offenses. As set forth above, there was probable cause to believe, at a minimum, evidence of conspiracy, harboring illegal aliens, and money laundering would be found on Amit P.'s phones. Evidence of these crimes "could be stored anywhere on [Amit P.'s] phone[s]." *Gross*, No. 25-CR-4021, 2025 WL 1833818, at *4. And "the warrant cabin[ed] the things being looked for by" specifying the relevant timeframe and "stating what crimes [are] under investigation." *Id.* This is sufficient.

Moreover, the Government also argues the *Leon*[8] good faith exception applies. Even if the warrant is overly broad or insufficiently particular, it is not "so facially deficient that no police officer could reasonably presume the warrant to be valid." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (quoting *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011)); *Cf. United States v. Vizcarra-Millan*, 15 F.4th 473, 505 (7th Cir. 2021) (good-faith exception applied when warrant allowed officers to seize and search every phone from gang's clubhouse regardless of ownership). None of the other three

---

[7] The warrant listed the target offenses, with statutory cites, as conspiracy, fraud and misuse of visas, permits, and other documents, sex trafficking, forced labor, labor trafficking, crimes related to harboring and unlawfully employing illegal aliens, money laundering, and maintaining drug-involved premises.

[8] *United States v. Leon*, 468 U.S. 897 (1984).

circumstances in which the good-faith exception does not apply are present.[9] In short, even if the warrant was defective, evidence obtained pursuant to the warrant should not be suppressed because the executing officers relied on the warrant in good faith.

**C. Franks[10] *Hearing.***

A defendant is not entitled to a hearing on whether there is a *Franks* violation unless the defendant "make[s] a substantial preliminary showing that the affiant included in the warrant affidavit a false statement knowingly and intentionally, or with reckless disregard for the truth, and the affidavit's remaining content is insufficient to establish probable cause." *United States v. Johnson*, No. 8:20CR165, 2022 WL 1065445, at *4 (D. Neb. Mar. 2, 2022), *R&R adopted by* 2022 WL 1063826 (D. Neb. Apr. 8, 2022), *aff'd sub nom.*, *United States v. Riaski*, 91 F.4th 933 (8th Cir. 2024) (citing *Franks*, 438 U.S. at 171). The same analysis applies to omissions of fact. The defendant must show: (1) facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading and (2) the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001).

This "substantial preliminary showing" is "not lightly met." *United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995). A defendant cannot prevail on a *Franks* challenge if the warrant affidavit continues to establish probable cause after the challenged offensive portions of the affidavit are excluded and any additional alleged facts are included. *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005). The "defendant must show more than negligence or an innocent mistake." *United States v. Finley*, 612 F.3d 998, 1002 (8th Cir. 2010) (citations omitted). A false statement is made in reckless disregard for the truth when, "viewing all of the evidence, the affiant must have entertained serious doubts as to

[9] The good faith exception is not applicable in four circumstances: "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned [their] judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Cannon*, 703 F.3d at 412.

[10] *Franks v. Delaware*, 438 U.S. 154 (1978).

the truth of [their] statements or had obvious reasons to doubt the accuracy of the information [they] reported." *Id.* (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

Amit P. argues he is entitled to a *Franks* hearing[11] because the affidavit did not specify the phones associated with the numbers ending in 0862 and 2152 only "possibly" belonged to him. He asserts separate Pen Register and Trap and Trace applications indicated these numbers only possibly belonged to him. There are no Pen Register or Trap and Trace applications in evidence. Notably, Amit P. told officers the 0862 number was his phone number during the July 30 traffic stop. Moreover, the affidavit is not seeking a warrant to search the phones associated with the numbers ending in 0862 and 2152. And the warrant authorized officers to seize and search phones used "extensively" by Amit P. without specifying these particular phones.

Agent Sullivan does not include any facts about the phone associated with the number ending in 2152 in the warrant affidavit. She does include facts establishing probable cause to believe the number ending in 0862 contains evidence of criminal activity. Agent Sullivan attested this is the number Ken texted the confidential source when he provided Amit P.'s contact information in connection with the Texas drop-off. However, simply because "investigators believed [Amit P.] to have used a certain phone assigned a particular number does not mean that there was no probable cause to search any other phone." *Robinson*, No. 23-CR-212, 2024 WL 3315497, at *2. It is reasonable to infer from the fact that evidence will be found on one of Amit P.'s phones that evidence will be found on any phone belonging to Amit P. *Id.*

Accordingly, even if Agent Sullivan included in the warrant affidavit that the phones associated with the numbers ending in 0862 and 2152 only possibly belong to Amit P., probable cause would still exist to seize and search any phones Amit P. used

[11] Amit P. also requests the Court: "Permit discovery and production of all materials relating to the Government's identification of the targeted telephones, including subscriber records, pen register returns, investigative reports, carrier records, and other evidence relied upon in seeking the warrant" Filing No. 253 at 13. He does not provide any supporting argument or legal authority. Accordingly, to the extent Amit P. is seeking additional discovery beyond a *Franks* hearing, he waived this argument by failing to brief it appropriately. *See* NECrimR 12.3(b).

"extensively." As set forth above, the warrant appropriately authorized officers to search phones found during the search of The Inn to determine which phones fall into this category. Amit P. is not entitled to a *Franks* hearing on this issue. It is not a *Franks* violation to omit that the phones associated with the numbers ending in 0862 and 2152 only possibly belonged to Amit P.

**CONCLUSION**

IT IS HEREBY RECOMMENDED to the Honorable Susan M. Bazis, United States District Judge, that Amit P.'s motions to suppress, Filing No. 252; Filing No. 253, and Filing No. 279, be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this Court may be held to be a waiver of any right to appeal the Court's adoption of the recommendation.

Dated this 6th day of November, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge